UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RAMI SHALHOUB, :
 :
           Petitioner :
    vs. : CIVIL NO. 1:CV-09-0976
 :
U.S. ATTORNEY GENERAL, et al., : (Judge Caldwell)
 :
           Respondents. :

*M E M O R A N D U M*

*I.    Introduction*

       Rami Shalhoub, presently a detainee of the United States Immigration and Customs Enforcement (ICE), incarcerated at the York County Prison, in York, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Shalhoub, represented by counsel, challenges the extended nature of his pre-removal detention. For the reasons set forth below, Shalhub's amended petition for writ of habeas corpus will be denied.

*II.    Background*

       Rami Shalhoub is a native and citizen of Palestine. (Doc. 14-2, Respts.' Exs. in Supp. of Resp. to Am. Habeas Corpus Pet. at p. 3).[1] In 2000, at the age of 17,

---

[1] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original
(continued...)

Shalhoub entered Canada on a student visa. In 2002, after he applied for asylum using another person's name, he was removed from Canada through Israel and returned to Israel/the West Bank. (Doc. 13-4, Application for Asylum and for Withholding of Removal at pp. 8-9). Shalhoub resided there, primarily in Jerusalem and Talba, until 2005. (*Id.* at p. 8).

In 2005, while in the West Bank, Shalhoub paid his cousin Fadi Shalo, a dual Palestinian/Jordanian citizen, to use his identity to obtain a Jordanian passport in his name but bearing Shalhoub's photograph. (*Id.* at p. 9). Shalhoub then presented the false passport to the United States consulate in Jerusalem to obtain a B-2 visitor's visa. (*Id.*) He entered the United States on December 3, 2005, at the JFK airport, New York City, New York, under the name Fadi Jamal Mohammad Shalo. (Doc. 13-5, November 13, 2006, Warrant for Arrest of Alien at p. 2).

In 2006, Fadi Shalo, Shalhoub's cousin, went to the United States consulate in Jerusalem to obtain a visa for himself. At this point Shalhoub "came under investigation." (Doc. 13-4 at p. 9). On November 13, 2006, while working as a driver outside a Newark Liberty Airport terminal, Shalhoub refused to move his car when requested by a police officer. (*Id.*) The officer then checked his identity and he was immediately detained by ICE. (*Id.* and Doc. 13-5 at p. 2).

---

¹(...continued)
documents.

On November 13, 2006, ICE commenced removal proceedings against Shalhoub by issuing a Notice to Appear (NOA). *See* Doc. 5-2, Respts.' Exs. In Supp. Resp. to Pet. for Writ of Habeas Corpus, at pp. 3-4. He was charged with procuring his visa by using another individual's identity in order to gain unlawful entry into the United States. *Id.* Petitioner was released on bond shortly thereafter by an IJ. (Doc. 13-7, 11/21/06 Order of the IJ with respect to Custody, at p. 2).

Shalhoub was eventually arrested for (1) fraud and misuse of visas, permits and other documents, in violation of 18 U.S.C. §§ 1546(a) and 2, and (2) aggravated identity theft during and in relation to that fraud and misuse, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2. (Doc. 13-8, April 18, 2007, Plea Agreement at p. 2; *see also* Doc. 13-13, Criminal Complaint). In exchange for his plea, the federal government agreed not to initiate any further criminal charges for fraud or identity theft in the District of New Jersey. (Doc. 13-8 at p. 2) On December 11, 2007, Shalhoub pleaded guilty to the above charges in the United States District Court for New Jersey, and was sentenced to 25 months incarceration. (Doc. 13-4 at p. 9). Shalhoub was released from criminal custody on November 7, 2008. (*Id.*)

On July 28, 2008, ICE charged Shalhoub with additional grounds of deportability under 8 U.S.C. § 1227(a)(2)(A)(iii) based on his December 2007 conviction suggesting he had committed an aggravated felony as defined by 8 U.S.C. § 1101(a)(43)(P). (Doc. 5-2 at p. 7). On August 11, 2008, Shalhoub appeared before an IJ and accepted a final order of removal order to Israel or through the Palestinian Territories, but also made clear at the time that he was fearful of being returned to

Jordan. The IJ ordered him removed from the United States to Israel, but not to Jordan. (Doc. 5-2, August 11, 2008, IJ Order, at p. 9). (Doc. 13-4 at p. 9). He was released from criminal custody on November 7, 2008 and immediately taken into ICE custody. (Doc. 13-4 at p. 9; Doc. 14-2, HQ POCR Checklist for 241-4 Reviews, p. 17).

On February 23, 2009, Shalhoub received his 90 day review. (Doc. 5-2, Decision to Continue Detention, at p. 10). ICE determined that he should remain in custody because ICE was working with the Consulate General of Israel and the Palestinian Liberation Organization (PLO) for permission to return him to the Palestinian Territories. (*Id.*) Shalhoub was notified that if he was not released or removed from the United States by May 13, 2009, jurisdiction of the custody decisions in his case would be transferred to the Headquarters Case Management Unit (HQCMU). (*Id.*) Based on Shalhoub's continued detention, his case was transferred to HQCMU on that date. (Doc. 14-2, HQ POCR Checklist for 241-4 Reviews, p. 17).

Since November 21, 2008, ICE has attempted to obtain the necessary verifications and documents to remove Shalhoub. (*Id.*). On February 18, 2009, ICE was waiting for permission to remove Shalhoub through Israel, only to learn on February 23, 2009, the PLO indicated they would issue a travel document for Petitioner once Israel granted him permission to transit through that country. (*Id.*) A few months later, Israel indicated it would not permit Shalhoub transit through Israel to the enter the West Bank. (*Id.*) Confronted by this impasse, ICE then attempted to obtain permission from Jordan to permit ICE to remove Shalhoub by entering the Palestinian Authority Territories through Jordan. (Doc. 14-2, Mot. to Reopen Proceedings before IJ, pp. 18 - 19).

On September 16, 2009, the IJ reopened Shalhoub's removal proceedings clarifying to both parties that they had misconstrued the earlier August 11, 2008, Order. (Doc. 14-2, IJ Order of September 16, 2009, pp. 21-22). "At that time, in an effort to facilitate the matter, the court suggested and the parties agreed, that the order of removal to Israel would be final but if Israel ultimately refused to issue travel documents to permit respondent's removal to that country or in transit to the Palestinian Territories, either party could seek reopening, and respondent could seek protection from being removed to Jordan. Now that the government is presently stymied from removing respondent to Israel, we find ourselves back to the point where respondent refuses to cooperate with his removal to Jordan." (*Id.* at p. 21)(footnote omitted). The IJ noted that "[t]his respondent was fully aware at the time the order was issued that he would have the opportunity of seeking protection from removal to Jordan should the government fail to remove him to Israel. fn2: While respondent's present counsel laments the fact that her client has been held in ICE custody for one year while his removal to Israel was sought, there is no knowledge by this court that the process could have been accomplished in a shorter time frame. Indeed, the letter from the Israeli Consulate she appends to her motion authorizing respondent's removal to a port of entry controlled by Jordan is dated June 12, 2009. In any event, any criticism of the government in this particular regard is not within this court's knowledge nor under its purview." (*Id.* at p. 22).

ICE intends to remove Shalhoub to the Territories controlled by the Palestinian Authority but does not have any intention of removing Shalhoub to Jordan. (Doc. 14-2, Mot. to Reopen Proceedings, p. 18). On September 16, 2009, Shalhoub filed

an Application for Asylum and for Withholding of Removal. (Doc. 14-2, I-589, Application for Asylum and for Withholding of Removal, pp. 33-43). A hearing on Shalhoub's application for withholding of removal was scheduled for February 24, 2010. (Doc. 14-2, Merits Hearing Notice, p. 44). On May 6, 2010, the IJ granted Shalhoub withholding of removal. (Doc. 17-3, Order of the IJ, p. 1). In the course of ruling in Shalhoub's favor on this claim the IJ found:

> overwhelming evidence points to the likelihood that respondent would be subjected to intentional infliction of sever pain or suffering upon his return to Jordan, evidence which is unrefuted ... Evidence points to Jordan seeking to arrest [Shalhoub] for illegally obtaining a Jordanian passport. While Jordan has every right to arrest those who break their laws, the salient point is that once arrested and detained, the record evidence overwhelmingly points to his likelihood of being subjected to torture during interrogation. Stated differently, there is nothing in this record remotely suggesting that respondent would be treated more leniently than many of his fellow countrymen who are detained under the same or similar circumstances. Given the widespread use of torture as an interrogation tool by Jordanian authorities, this respondent has met his burden of proof that he is likely to be subjected to ill-treatment amounting to torture during detention and interrogation. There is little effective oversight of the Jordanian security forces, and impunity for those officers who use torture during detention and interrogation is the rule rather than the exception. In effect, there is little in this record upon which the court is left to speculate.

(*Id.* at pp. 7 - 8). The IJ issued the following order:

> ORDER: Respondent is hereby ordered removed from the United States. FURTHER ORDER: Respondent's removal to Jordan is hereby withheld in accordance with INA § 241(b)(3). FURTHER ORDER: Respondent's removal to Jordan is further withheld in accordance with 8 C.F.R. § 1208.16(c) and (d).

Doc. 17-3, Decision and Order on Application of Removal; Convention Against Torture, p. 9. The government has indicated its intention to file an appeal of the IJ's May Order. (Doc. 17-4, Notice of Appeal). Shalhoub remains in detention while the government appeals the IJ's decision to the Board of Immigration Appeals (BIA).

To date Shalhoub has been in ICE custody for a little over 18 months. Shalhoub contends that the duration of his pre-removal confinement has become unreasonable. More specifically, Shalhoub asserts that the mandatory detention provision of 8 U.S.C. § 1226(c), does not apply to him, and further the provision, as interpreted by the United States Supreme Court, authorizes such detention for a relatively short period of time, and that the delay in this case exceeds that limitation. Accordingly, he seeks habeas relief in the form of an order directing that he either be released under reasonable terms of supervision or be given a constitutionally adequate bail hearing.

III.     *Discussion*

The apprehension and detention of aliens, pending removal decisions, are governed by INA § 236, codified at 8 U.S.C. § 1226. Pursuant to § 1226(a), the Attorney General may issue a warrant for arrest and detention, pending a decision on whether the alien is to be removed from the United States. Section 1226(a) provides for individualized detention determinations. Aliens detained pursuant to § 1226(a) may be released if they demonstrate they would not pose a danger to property or persons and they are likely to appear for any future proceedings. 8 C.F.R. § 236.1(c)(8). While Section 1226(a) permits discretionary release of aliens on bond or conditional parole, the mandatory

-7-

detention provision of § 1226(c) does not.  Section 1226(c)(1) states that "[t]he Attorney General shall take into custody any alien who ... (B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title."  INA § 236(c)(1)(B) codified at 8 U.S.C. § 1226(c)(1)(B).  The Supreme Court has held that detention pursuant to Section 1226(c), without and individualized determination hearing, during removal proceedings is constitutionally permissible.  *Demore v. Kim*, 538 U.S. 510, 531, 123 S.Ct. 1708, 1721-1722, 155 L.Ed.2d 724 (2003).

Shalhoub's petition challenges the duration of his continuing pre-removal confinement under the mandatory detention provisions of 8 U.S.C. § 1226(c).  Shalhoub's entitlement to relief turns, in part, on identifying the correct statutory framework of detention authority of the Immigration and Nationality Act (INA) the Attorney General is relying upon to detain him.  This is important because "[w]here an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

The government contends "that because Shalhoub is not subject to a final order of removal and he was convicted of an offense covered in section 237(a)(2)(A)(iii)[2] ... he is subject to mandatory detention."  (Doc. 14, Resp. to Am. Pet. for Writ of Habeas Corpus, p. 6).  We agree with Respondent that, based on the re-opening of Shalhoub's removal proceedings, and the government's appeal of the IJ's May 2010 decision

---

[2] This section is codified at 8 U.S.C. § 1227(A)(2)(A)(iii).

-8-

granting him withholding from removal, Shalhoub is not presently subject to a final order of removal. Likewise, we agree that Shalhoub's December 2007 visa fraud conviction constitutes an aggravated felony pursuant to INA § 237(a)(2)(A)(iii), codified at 8 U.S.C. § 1227(a)(2)(A)(iii). Accordingly, Shalhoub's present day pre-final order detention is based on 8 U.S.C. 1226(c) and we must now consider whether the extended length of Shalhoub's detention presents a uniquely compelling set of facts in light of *Demore* that would merit the habeas relief in the form of an individualized hearing before an IJ as to his eligibility for parole pending the outcome of his removal proceedings.

Although the Supreme Court held in *Demore* that detention pursuant to Section 1226(c), without an individualized determination hearing, was constitutionally permissible, the Supreme Court's holding as noted by Judge Yvette Kane in *Madrane v. Hogan*, 520 F.Supp.2d 654 (M.D. pa. 2007), is "narrow ... grounded in repeated reference" to the brevity of the removal proceedings. *Id.* at 664. Under Section 1226(c), the Supreme Court indicated that detention pending removal proceedings has a definite termination point, in the majority of cases it lasts for "roughly a month and a half." *Demore*, 538 U.S. at 529, 123 S.Ct. at 1720. Although Shalhoub's 18 month period of detention is lengthy under *Demore*, we must also evaluate the reasonableness of the lengthy detention given consideration of the agency proceedings to date. *Prince v. Mukasey*, 593 F.Supp.2d 727, 735 (M.D. Pa. 2008).

According to the IJ, both parties understood when the initial order of removal was entered in August 2008 that Shalhoub "did not object to being removed from the United States, if and only if, his removal was to Israel or through Israel to the

-9-

Palestinian Territories" as he was clear that he was fearful of being removed to Jordan. (Doc. 13-2 at p. 3). The IJ also noted that if Israel refused to issue travel documents to permit Shalhoub's passage to that country or through it to get to the Palestinian Territories, "either party could seek reopening." (*Id.*) On that basis, Shalhoub's removal order was finalized prior to his ICE detention in November 2008. Respondents commenced their efforts to remove Shalhoub, as he wished, through Israel as early as 2 weeks after his ICE detention commenced. (Doc. 14-2 at p. 17). Prior to the expiration of his six months of post-final order confinement, ICE had also sought permission for him to travel through Israel. (*Id.*) Nine months into their efforts, Israel refused to permit his removal their. (*Id.* and Doc 13-2 at p. 4 fn.2). This was a risk both parties were aware of, and Shalhoub accepted these terms in August 2008. Thus, the length of Shalhoub's previous post-final order detention was neither excessive nor unreasonable. The change of circumstances forcing the reopening of his removal proceedings must be acknowledged as a factor in evaluating the reasonableness of the length of his detention. His proceedings were reopened in September 2009. Since then Shalhoub has delayed the finalization of his removal proceedings by his filing an Application of Asylum and for Withholding of Removal. The Court is not criticizing Shalhoub for the filing of this application as clearly it is within his right to do so and the IJ agreed with him. Nonetheless, his present day, pre-final order detention has been extended by those proceedings. Considering his mandatory detention status under § 1226(c) combined with his application for withholding from relief, his pre-final order detention has not been unreasonably long. Furthermore, the IJ just this month granted him relief on his

-10-

application. The government's appeal to the BIA is due in early June. Thus, while his detention has been lengthy, the record does not demonstrate that his pre-final order detention is indefinite or fraught with unreasonable delay. Under the unique circumstances presented in this case, and the fluctuating nature of the authority upon which different portions of Shalhoub's detention have been based, the Court does not find Shalhoub's detention to be indefinite or violate due process. When the appellate machine related to Shalhoub's petition for withholding of removal completes its process, the authority governing this alien's detention will also change and his avenues for relief of detention will also change. For the foregoing reasons, the Court concludes that Shalhoub's detention does not violate due process, and the amended petition will be denied.

        We will issue an appropriate order.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge

Date: June 1, 2010

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RAMI SHALHOUB, :
:
         Petitioner :
    vs. : CIVIL NO. 1:CV-09-0976
:
U.S. ATTORNEY GENERAL, et al., : (Judge Caldwell)
:
         Respondents. :

*O R D E R*

AND NOW, this 1st day of June, 2010, upon consideration of the Shalhoub's Amended Petition for Writ of Habeas Corpus (doc. 13), it is Ordered that:

1. The Amended Petition for Writ of Habeas Corpus (doc. 13) is denied.

2. The Clerk of Court shall close this case.

         /s/William W. Caldwell
         William W. Caldwell
         United States District Judge